IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00197-PSF-CBS

FREIDA LYNN MITCHELL,
        Plaintiff,
v.

THE GEO GROUP, INC.,
        Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND ORDER VACATING FINAL PRETRIAL CONFERENCE

---

Magistrate Judge Craig B. Shaffer

Pending before the court is Defendant The Geo Group, Inc.'s ("Geo Group") Motion for

Summary Judgment (doc. # 52), filed on December 5, 2005.  Pursuant to the Order of Reference

dated February 11, 2005 (doc. # 9) and the memorandum dated December 6, 2005 (doc. # 53),

the motion was referred to the Magistrate Judge to "submit proposed findings of fact and

recommendations for rulings . . . ."

Plaintiff Freida Mitchell, in her *pro se* capacity, filed her "Opposition to Summary of

Judgment" on December 30, 2005.  Geo Group filed a Reply Supporting its Motion for Summary

Judgment on January 11, 2006.  On February 9, 2006, volunteer counsel entered on behalf of

Mitchell and shortly thereafter moved to re-open discovery.  On March 29, 2006, the court re-

opened discovery for two months.  The court also allowed Mitchell to take additional depositions

and serve additional written discovery.  The court held the pending Motion for Summary

Judgment in abeyance to allow Mitchell sufficient time to complete the additional discovery and

1

prepare a more comprehensive response to the pending motion.  On June 19, 2006, Mitchell filed a Sur-Response in Opposition to Geo Group's Motion for Summary Judgment.  Geo Group filed its Sur-Reply Supporting its Motion for Summary Judgment on June 29, 2006.  The court has carefully considered the motion, the parties' briefs and attached exhibits, the entire case file and the applicable law, and is sufficiently advised in the premises.

PROCEDURAL BACKGROUND

This action commenced on February 3, 2005, with the filing of a *pro se* Complaint alleging claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  Geo Group is a private entity specializing in the development and/or management of correctional facilities.  Geo Group operates a detention facility in Aurora, Colorado under contract with the Bureau of Immigration and Customs Enforcement that provides housing to alleged illegal aliens awaiting administrative hearings pertaining to deportability.  Geo Group terminated Mitchell from her position as a payroll specialist on May 20, 2003.  Mitchell claimed that she was terminated based on her disability and in retaliation for her complaints of discrimination.

On June 23, 2005, the District Court entered an Order granting in part and denying in part Geo Group's Motion to Dismiss.  The District Court dismissed Mitchell's claims of substantive discrimination under Title VII, the ADA, and the ADEA, as well as her claims of retaliation in violation of the ADA and ADEA.  Geo Group's motion to dismiss Mitchell's Third Claim for Relief was denied as to claims for retaliation in violation of Title VII.  (*See* Order on May 23, 2005 Recommendation of Magistrate Judge (doc. # 31)).

2

## LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. *Celotex*, 477 U.S. at 325. If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"In determining whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party." *Curtis v. Oklahoma City Pub. Sch. Bd. of Education*, 147 F.3d 1200, 1214 (10th Cir. 1998). *See also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (noting that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant"). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Immaterial factual disputes and evidence that is not significantly probative will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp.2d 1246, 1252 (D. Colo. 1998).

## TITLE VII RETALIATION CLAIM

Title VII prohibits discrimination against an employee because "he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 2000e-3(a). "Where there is no direct evidence of retaliation, we analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework." *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and *Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998) (applying the McDonnell Douglas framework to a claim of retaliation)).

"As to the *McDonnell Douglas* first prong, [Mitchell] must first demonstrate a prima facie case." *Stover*, 382 F.3d at 1071. "To state a prima facie case of retaliation, [Mitchell] must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) [Geo Group] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover*, 382 F.3d at 1071 (citations omitted). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (noting that the burden imposed on a plaintiff at the *prima facie* stage is not onerous). A plaintiff must show that his or her protected activity was a "but for" cause of the adverse employment action. "If the employee does not bear that burden of persuasion, [he or] she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

Once Mitchell establishes her *prima facie* case, there is a presumption of retaliation and the burden of production then shifts to Geo Group, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by Mitchell. *See*

*McDonnell Douglas*, 411 U.S. at 802.

> The defendant's burden is merely to articulate through some proof a facially
> nondiscriminatory reason for the [adverse employment action]; the defendant does
> not at this stage of the proceedings need to litigate the merits of the reasoning, nor
> does it need to prove that the reason relied upon was bona fide, not does it need to
> prove that the reasoning was applied in a nondiscriminatory fashion.

*E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

If Geo Group can produce evidence that the employment action was motivated by a

legitimate nondiscriminatory reason for the adverse employment action, the presumption created

by Mitchell's *prima facie* case drops out of the litigation.  It then remains Mitchell's burden to

show that her protected activity was a determinative factor in Geo Group's employment actions,

or show that Geo Group's explanation for its action was merely pretextual.  *Flasher*, 986 F.2d at

1321.

> To show that an employer's proffered nondiscriminatory reason for an
> employment action is pretextual, a plaintiff must produce evidence of "'such
> weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the
> employer's proffered legitimate reasons for its action that a reasonable factfinder
> could rationally find them unworthy of credence and hence infer that the employer
> did not act for the asserted non-discriminatory reasons.'"

*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450

F.3d 476, 490 (10th Cir. 2006) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.

1996)).  *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (ultimate

burden of persuading the trier of fact that defendant deliberately discriminated against the plaintiff

remains at all times with the plaintiff).

## ANALYSIS

In moving for summary judgment on Mitchell's remaining claim for retaliation under Title

VII, Geo Group contends that Mitchell has failed to present sufficient evidence to show that Geo

Group's explanation for her termination was pretextual.  A careful reading of the parties' briefs reveals that the following material facts are not in dispute.

Mitchell, an African-American female, was hired as a payroll clerk for Geo Group's Aurora facility on February 21, 2002.  Throughout her employment, Mitchell's direct supervisor was Barbara Krumpelmann (Geo Group's Statement of Undisputed Material Facts at ¶ 2; Mitchell's Sur-Response at p. 5).  It is undisputed that Mitchell was the only employee at the Aurora facility who held the job title of payroll clerk (Geo Group's Statement of Undisputed Material Facts at ¶ 3;  Mitchell's Sur-Response at p. 5).  On February 19, 2002, Mitchell signed the acknowledgment page of Geo Group's employee handbook.  The employee handbook acknowledged that "eligible" employees were entitled to take up to twelve weeks of unpaid job-protected leave under the FMLA in a twelve  month period (Geo Group's Statement of Undisputed Material Facts at ¶¶ 4 and 5;  Mitchell's Sur-Response at p. 5).

Also on February 19, 2002, Mitchell signed a document acknowledging receipt of Geo Group's employee disciplinary policies and procedures.  Specifically, Policy No. 5.3.14, permitted Geo Group to impose disciplinary sanctions on employees that violated policies, rules, standards, procedures, or practices of Geo Group.  Policy No. 5.3.14 provided that any employee could be recommended for dismissal for any three sustained violations within a 12-month period, and further warned that "dismissal may result from repeated disciplinary violations of a less serious nature" (Geo Group's Statement of Undisputed Material Facts at ¶¶ 6-8;  Mitchell's Sur-Response at p. 6).

On or about May 13, 2002, and again on July 10, 2002, Mitchell received performance evaluations which indicated, in part, that her "Quantity of Work and Volume of Work Regularly

Produced" was "below job requirements and needed improvement" (Geo Group's Statement of Undisputed Material Facts at ¶ 9; Mitchell's Sur-Response at p. 6). According to Geo Group, Mitchell conceded during her deposition that these rankings reflected errors she made in payroll. Ms. Krumpelmann met with Mitchell on or about September 6, 2002 and gave her an performance appraisal that described Mitchell's work as "competent" in all areas. While this performance review noted that Mitchell "has not accomplished the goal of an error free transmission of payroll," it did acknowledge that "a substantial effort has been made on her part and she shows a significant improvement in this area" (Geo Group's Statement of Undisputed Material Facts at ¶ 10; Mitchell's Sur-Response at p. 6).

It is undisputed that Mitchell submitted work-related complaints in 2002. On June 24, 2002, Mitchell sent a letter to Stephen Pontesso, then the Warden of the Aurora facility, in which she complained about payroll department policies instituted by Krumpelmann (Geo Group's Statement of Undisputed Material Facts at ¶ 11; Mitchell's Sur-Response at p. 6). On October 6, 2002, Mitchell submitted another letter to Warden Pontesso discussing disputes she had with Mychael Henderson, a detention officer, relating to the accuracy of his pay checks. Mitchell admitted during her deposition that neither of these complaints involved racial discrimination (Geo Group's Statement of Undisputed Material Facts at ¶ 12; Mitchell's Sur-Response at p. 6). On November 20, 2002, Mitchell wrote a letter to Marcia Aldrich, the Director of Employee Relations at Geo Group's corporate office. In this letter, Mitchell addressed her previous complaints and raised new issues such as Krumpelmann's trustworthiness as an employee, discrepancies occurring in payroll, and Mitchell's concern and dislike for a co-worker (Geo Group's Statement of Undisputed Material Facts at ¶ 13; Mitchell's Sur-Response at p. 6).

Mitchell concedes that her letter to Ms. Aldrich did not allege race discrimination.

In January of 2003, Ed Brown, the Director of Operations of Geo Group's regional office, visited the Aurora facility to investigate Mitchell's November 20, 2002 complaint.  Mr. Brown concluded that Geo Group had not acted improperly (Geo Group's Statement of Undisputed Material Facts at ¶ 14;  Mitchell's Sur-Response at p. 6).  Mitchell took exception to Brown's investigation and findings in a letter to Michael Kraus, Geo Group's Director of Compliance and Staffing, dated February 10, 2003.  Mitchell's letter claimed that she had been retaliated against by several Geo Group employees, but apparently did not raise the issue of race discrimination (Geo Group's Statement of Undisputed Material Facts at ¶ 15; Mitchell's Sur-Response at p. 6).

On January 15, 2003, Krumpelmann gave Mitchell a verbal warning for entering time for employees without supplying proper back up documentation (Geo Group's Statement of Undisputed Material Facts at ¶ 16;  Mitchell's Sur-Response at p. 6).  This verbal warning did not result in any change in Mitchell's pay, status, benefits or job responsibilities.  Krumpelmann submitted a complaint to Warden Pontesso on February 5, 2003, indicating several instances when Mitchell had made errors in the payroll reporting system (Geo Group's Statement of Undisputed Material Facts at ¶ 17;  Mitchell's Sur-Response at p. 6).  Krumpelmann submitted another complaint to Warden Pontesso on February 13, 2003, claiming that Mitchell spoke to her in a loud tone (Geo Group's Statement of Undisputed Material Facts at ¶ 18;  Mitchell's Sur-Response at p. 6).

After an investigation by Geo Group, Mitchell received a letter dated February 24, 2003, stating that she had been insubordinate to Krumpelmann, a level 2 violation, and that she had

made serious errors in payroll which constituted "Unsatisfactory Job Performance Which Severely Impacts the Efficient and Effective Operations of the Facility," a level 1 violation.  Mitchell was suspended for three days, effective March 4, 5, and 6, 2003 (Geo Group's Statement of Undisputed Material Facts at ¶ 19;  Mitchell's Sur-Response at p. 6).

On February 19, 2003, and March 18, 2003, Mitchell sent letters to Michael Kraus, Director of Compliance and Staffing at Geo Group's corporate office, re-visiting past disputes involving Krumpelmann and other employees.  In these letters, Mitchell mentioned "hostile work environment," "harassment" and "retaliation," but did not complain about race discrimination (Geo Group's Statement of Undisputed Material Facts at ¶ 20;  Mitchell's Sur-Response at p. 6).

Mitchell did not return to work after receiving the February 24, 2003 letter imposing a three-day suspension (Geo Group's Statement of Undisputed Material Facts at ¶ 21;  Mitchell's Sur-Response at p. 6).  Mitchell requested FMLA leave beginning on February 26, 2003 (Geo Group's Statement of Undisputed Material Facts at ¶ 22;  Mitchell's Sur-Response at p. 6).  On March 11, 2003, Geo Group sent Mitchell a letter directing her to provide Krumpelmann "with periodic reports of [Mitchell's] status and intent to return to work every 30 days while on FMLA leave." (*See* Geo Group's Motion for Summary Judgment, Exhibit B-6).  Mitchell was also told that before returning to work, she would have to provide a certificate from her health care provider acknowledging her ability to resume work without restrictions.  *Id.*  Mitchell provided the requested medical certification.  Geo Group insists that Mitchell never contacted Krumpelmann while on FMLA leave and never provided Krumpelmann with the requested

periodic reports (Geo Group's Statement of Undisputed Material Facts at ¶ 23).[1]  On March 25,

2003, Geo Group sent a letter to Mitchell stating that she was entitled to use 12 weeks of FMLA

leave in a 12-month period.  Based on previous FMLA leave she had taken in 2002, the letter

stated that Mitchell's remaining FMLA leave would expire on May 20, 2003.  In the same letter,

Mitchell was told to provide Geo Group with a "Return to Work Certification" from her health

care provider before resuming her duties at work (Geo Group's Statement of Undisputed Material

Facts at ¶ 24;  Mitchell's Sur-Response at p. 7).

On April 16, 2003, Mitchell filed a Charge of Discrimination with the EEOC, alleging race

discrimination and retaliation (Geo Group's Statement of Undisputed Material Facts at ¶ 252;

Mitchell's Sur-Response at p. 7).

On or about April 24, 2003, Mitchell requested an extension of her FMLA leave through

August 25, 2003, because she knew she would not be able to return to work (Geo Group's

Statement of Undisputed Material Facts at ¶ 26;  Mitchell's Sur-Response at p. 7).   Geo Group

denied this request in a letter dated May 8, 2003, stating that its policies did not permit extensions

of FMLA leave beyond 12 weeks and that Mitchell's employment would be terminated if she was

unable to return to work by May 20, 2003 (Geo Group's Statement of Undisputed Material Facts

at ¶ 26;  Mitchell's Sur-Response at p. 7).  On May 20, 2003, Mitchell did not return to work

(Geo Group's Statement of Undisputed Material Facts at ¶ 27;  Mitchell's Sur-Response at p. 7).

Geo Group further contends that Mitchell made no attempt to contact her direct supervisor,

---

[1]        While her Sur-Response disputes this assertion, Mitchell has testified that she
never called Krumpelmann or communicated with Krumpelmann by mail after leaving Geo Group
on February 25, 2003.  (*See* Geo Group's Motion for Summary Judgment, Exhibit B, at pp. 251-
252).

Krumpelmann, on May 20, 2003.  (*See* Geo Group's Motion for Summary Judgment at ¶ 27).

Although Mitchell disputes this fact in her Sur-Response, she admitted during her deposition that

she never contacted Krumpelmann by telephone or e-mail on May 20, 2003.  (*See* Geo Group's

Motion for Summary Judgment, Exhibit B at p. 287).

   On May 20, 2003, the Assistant Facility Administrator, Charles M. Martin, conducted

an administrative investigation regarding Mitchell's failure to return to work and her failure to

contact and report to Krumpelmann while on FMLA leave (Geo Group's Statement of

Undisputed Material Facts at ¶ 29;  Mitchell's Sur-Response at pp. 7-8).  At the conclusion of

that investigation, Tim Hatch, Acting Warden, charged Mitchell with "Unexcused Absenteeism,"

a level 3 violation, and "Intentional failure to obey any legal order from a proper authority," a

level 2 violation.  Based on Hatch's recommendations, Mitchell's employment was terminated by

Geo Group's Western Regional office effective May 22, 2003 (Geo Group's Statement of

Undisputed Material Facts at ¶¶ 30-31;  Mitchell's Sur-Response at p. 8).

   In light of the foregoing undisputed facts, the court concludes that Mitchell has come

forward with sufficient evidence to support the first and second elements of her *prima facie*

retaliation claim.  Legitimate opposition activity is protected activity under Title VII.  *Love v.

Re/Max of America*, 738 F.2d 383, 385 (10th Cir. 1984) ("opposition activity is protected when it

is based on a mistaken good faith belief that Title VII has been violated").  Here, the undisputed

evidence shows that on April 16, 2003, Mitchell filed a Charge of Discrimination with the EEOC,

alleging race discrimination and retaliation.[2]  *See* 42 U.S.C. § 2000e-3(a) ("protected activity"

---

[2]      Apparently, Mitchell's retaliation claim is not based on her work-related
complaints submitted in 2002.  The undisputed facts indicate that those complaints did not involve
claims of illegal discrimination.  To qualify as protected activity, the employee's efforts must be

includes opposition to any employment practice made unlawful under Title VII, or making a

charge, testifying, assisting, or participating in any manner in an investigation, proceeding or

hearing under Title VII).   Termination certainly constitutes adverse employment action for

purposes of Title VII.. *See Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. at

2415 (to prevail on a retaliation claim, a plaintiff must show that "a reasonable employee would

have found the challenged action materially adverse").

The court also finds that Mitchell has established the third element of her *prima facie* case,

which requires a causal connection between the protected activity and the adverse employment

action. A plaintiff must present some evidence that the employer took the adverse employment

action for the purpose of retaliation. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320-

21 (10th Cir. 1999).   A causal connection or retaliatory motive may be shown by circumstantial

evidence, such as protected conduct closely followed by adverse action. *See Candelaria v.

EG&G Energy Measurements, Inc.*, 33 F.3d 1259, 1261-62 (10th Cir. 1994) (retaliatory motive

can be inferred from fact that adverse employment action follows charges against employer). *See

also O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (noting that a

one and one-half month period between protected activity and adverse action may, by itself,

---

directed toward  Title VII violations. *Cf. Petersen v. Utah Department of Corrections*, 301 F.3d
1182, 1188 (10th Cir. 2002) ("opposition to an employer's conduct is protected by § 2000e-3(a)
only if it is opposition to a 'practice made an unlawful employment practice by [Title VII]'");
*Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999) (postal employee did not engage in
protected activity during telephone conversation with Postal Service official in which she
threatened to bring civil suit, but did not complain of illegal discrimination); *Comstock v.
Consumers Markets, Inc.*, 953 F. Supp. 1096, 1103 (W.D. Mo. 1996) (employee's lawsuit not
"protected activity" under Title VII, where suit not brought under Title VII and did not allege
employer engaged in any conduct that violated Title VII).

establish causation).[3]

Based upon Mitchell's *prima facie* case of retaliation, the burden shifts to Geo Group to present a legitimate, nondiscriminatory reason for the decision to terminate Mitchell. According to Geo Group, Mitchell was terminated based upon her failure to comply with direct orders that required Mitchell to report to her immediate supervisor while on FMLA leave, and her history of violations over the preceding year. Geo Group also contends that Mitchell was terminated after she had exhausted her FMLA leave but failed to return to work. These reasons are both legitimate and nondiscriminatory. "An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, and disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals." *Ogunleye v. Arizona*, 66 F. Supp.2d 1104, 1110 (D. Ariz. 1999) (quoting *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985)).

The burden thus shifts back to Mitchell to present evidence that Geo Group's "proffered

---

[3]     While temporal proximity may sustain Mitchell's *prima facie* burden, it has a limited significance in the context of the pending motion. As the Tenth Circuit has acknowledged "The burden of establishing a prima facie case [in the *McDonnell Douglas* framework] is not onerous." It is because of this relatively lax burden that we allow temporal proximity between a protected activity and an adverse action to establish a prima facie case; for the same reason, we have not imported this lessened standard to pretext analysis where the burden is more demanding and requires a plaintiff to assume "the normal burden of any plaintiff to prove his or her case at trial."
*Annett v. University of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (internal citations omitted). *See also Medina v. Income Support Division*, 413 F.3d 1131, 1138 (10th Cir. 2005) (concluding that a five-week span of time between plaintiff's protected activity and the alleged adverse action, "without more," was insufficient to establish pretext); *Pastran v. K-Mart Corporation*, 210 F.3d 1201, 1206 (10th Cir. 2000) (close temporal proximity suggests pretext, but is not sufficient by itself to raise an issue of fact).

reason for the employment decision was pretextual – *i.e.*, unworthy of belief." *Kendrick v.*

*Penske Transportation Services, Inc.*, 220 F.3d 1220,1230 (10th Cir. 2000) (quoting *Randle v.*

*City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).  It is not enough to disbelieve Geo Group's

explanation.  The court may not second-guess an employer's business judgment.  *Byrnie v. Town*

*of Cromwell, Board of Education*, 243 F.3d 93, 102 (2d Cir. 2001). "The relevant inquiry is not

whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer]

honestly believed those reasons and acted in good faith upon those beliefs." *Bullington*, 186 F.3d

at 1318.  To defeat summary judgment, Mitchell must present evidence sufficient to allow a

rational fact-finder to infer that Geo Group was actually motivated by a retaliatory intent.  *See St.*

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (a proffered "reason cannot be proved

to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that

discrimination was the real reason") (emphasis in original).

    As evidence of pretext, Mitchell points to: (1) Geo Group's alleged fabrication of an

FMLA leave extension policy and inconsistencies in Geo Group's treatment of leave requests; (2)

evidence suggesting that Geo Group's stated reason for Mitchell's termination is false; and (3)

perceived inconsistencies and contradictions in the evidence provided by Geo Group's employees.

These arguments are not sufficient to sustain Mitchell's burden under *McDonnell Douglas*.

    First, Geo Group asserts that Mitchell's request for an extension of her FMLA leave was

denied, in part, because Geo Group's policy did not allow such extensions.  Mitchell contends

that because Geo Group's FMLA policy contains "no provision addressing FMLA extensions"

(*see* Mitchell's Sur-Response at p. 13), a genuine issue of material fact remains for trial as to why

she was denied an FMLA extension or additional unpaid leave.  The court disagrees.  Mitchell's

contention that "no FMLA extension policy existed" (*see* Mitchell's Sur-Response at p. 13) does not create an inference that Geo Group's failure to extend Mitchell's FMLA leave was a pretext for retaliation.   It is undisputed that FMLA leave is limited to 12 weeks within a 12-month period.   At best, the evidence shows that Geo Group had no policy of extending FMLA leave.

Mitchell argues that two other employees, Ms. Andrews and Mr. Bonavia, were granted leave without pay after their FMLA leave had expired.   When a plaintiff lacks direct evidence of discrimination, she may also show that she was subjected to different treatment than persons similarly situated in all relevant aspects.   *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).   *See also Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) ("To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness.");   *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir.1994) (to make a comparison demonstrating discrimination, plaintiff must show employees were similarly situated).   Mitchell contends that "Geo Group not only fabricated an FMLA extension policy to deny [her] request, it also failed to tell Ms. Mitchell about the option of unpaid leave which it offered to two other employees."   Ms. Mitchell argues these procedural inconsistencies create a genuine issue of material fact.   The evidence shows that Mitchell and the two employees who were granted extended leave were not similarly situated.

Ms. Andrews and Mr. Bonavia were detention officers who had different supervisors than Mitchell.   (*See, e.g.*, Geo Group's Sur-Reply, Exhibit C-4 at pp. 296-97).   Warden Pontesso made the decisions to grant Andrews and Bonavia unpaid leave while Assistant Facility Administrator Martin and Warden Hatch and made the decisions to deny Mitchell's requests to extend her

FMLA leave.  (Mitchell's Sur-Response at p. 3).  Mitchell does not dispute that there were

"scores of" detention officers and that she was the only employee at Geo Group's Aurora facility

who held the job title of payroll clerk.  (Mitchell's Sur-Response at pp. 5, 7;  Geo Group's Sur-

Reply, Exhibit C-1 part 2 at p. 40, Exhibit C-8 at p. 69 (*under seal*)).  Mitchell admits that in her

absence, other employees had to take over her duties.  (Mitchell's Sur-Response at p. 7).

Bonavia, a white male, attempted to return to work on crutches after his FMLA leave

expired.  (Geo Group's Sur-Reply, Exhibit C-2 at p. 92 (*under seal*), Exhibit C-8 at p. 151 (*under

seal*)).  Bonavia was given an unpaid leave of absence for approximately 23 days after his FMLA

leave had expired, from January 21, 2003 to February 13, 2003, so that he could obtain a release

from his medical restrictions and return to full duty.  (*See* Geo Group's Sur-Reply, Exhibit C-9

(*under seal*)).  Geo Group did not extend Bonavia's FMLA leave, but permitted him an unpaid

leave of absence.  (*See* Geo Group's Sur-Reply, Exhibit C-8 at p. 153 (*under seal*), ). While

FMLA leave required Geo Group to hold a job open for Bonavia, the unpaid leave of absence did

not carry the same requirement.  (*See* Geo Group's Sur-Reply, Exhibit C-1 at p. 81, Exhibit C-8

at p. 112 (*under seal*), Mitchell's Sur-Response, Exhibit 5 at p. 34, Exhibit 6 at p. 36). When

Bonavia could not return to work as of February 23, 2003, he was terminated.  (*See* Geo Group's

Sur-Reply, Exhibit C-9 (*under seal*)).

Andrews, an African American female, was afforded an unpaid leave of absence  from on

or about August 5, 2003 to December 5, 2003, after her FMLA leave had expired.  (*See* Geo

Group's Sur-Reply, Exhibit C-1 part 2 at p. 39, Exhibit C-8 at p. 112 (*under seal*)).  In addition

to having a serious health condition, Andrews was pregnant.  Geo Group believed that she was

also protected under laws governing pregnancy.  (*See* Geo Group's Sur-Reply, Exhibit C-2 at pp.

75-76, 92-94 (*under seal*)).[4]  Andrews specifically requested an unpaid leave of absence.  (*See* Geo Group's Sur-Reply, Exhibit C-1 at p. 39).

Second, Mitchell admits that she was the only employee at Geo Group's Aurora facility who held the job title of payroll clerk and that Krumpelmann was her direct supervisor. (Mitchell's Sur-Response at pp. 5, 7).  Mitchell admits that Geo Group sent her a letter dated March 11, 2003 stating that Mitchell was required to "furnish us with periodic reports of your status and intent to return to work every 30 days while on FMLA leave" and that "[t]his communication must also be directed to your immediate supervisor, Ms. Krumpelmann."  (*See* Mitchell's Sur-Response at p. 7;  Geo Group's Motion for Summary Judgment, Exhibit B-6 ). Mitchell admitted that she understood these instructions but did not contact Krumpelmann directly.  (Geo Group's Motion for Summary Judgment, Exhibit B at pp. 251-53, 264-65; *see also* Geo Group's Sur-Reply, Exhibit C-8 at pp. 15, 150, 155; Mitchell's Sur-Response, Exhibit 10 at pp. 75-76).  Geo Group had a legitimate basis for asking employees to communicate directly with their immediate supervisors.  (*See* Geo Group's Sur-Reply, Exhibit C-5 at p. 173 ("The reason why we ask them to specifically communicate with their immediate supervisor is so there is no guess work on does the supervisor know or not know your status.  For the employee to unilaterally decide I will no longer speak to m[y] supervisor, I will only speak through this manager of, you know, HR or accounting is not acceptable")).  Mitchell does not allege that Bonavia or Andrews failed to communicate with their direct supervisors regarding their leave status.  Nor does Mitchell allege that Andrews or Bonavia had received prior disciplinary action.

---

[4]      Even "a mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual."  *Green v. New Mexico*, 420 F.3d 1189, 1191 n. 2 (10th Cir. 2005) (internal quotation marks and citations omitted).

(*See* Geo Group's Sur-Reply, Exhibit C-6 at p. 52).

Mitchell admits that on March 25, 2003, Geo Group sent her a letter stating that she was entitled to use 12 weeks of FMLA leave in a 12-month period, that based on previous FMLA leave she had taken in 2002 her remaining FMLA leave would expire on May 20, 2003, and that she was required to provide a "Return to Work Certification" from her health care provider before returning to work  (Geo Group's Statement of Undisputed Material Facts at ¶ 24; Mitchell's Sur-Response at p. 7).  It is undisputed that both the March 11, 2003 letter requiring Mitchell to report to Krumpelmann while on FMLA leave and the March 25, 2003 letter informing Mitchell that her FMLA leave expired on May 20, 2003 were sent to Mitchell before she filed her EEOC charge on April 16, 2003.  *Cf. Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (intervening events defeated any inference of retaliation because the company's concerns predated plaintiff's internal complaint).

Mitchell admits that on or about April 24, 2003, she requested an extension of her FMLA leave through August 25, 2003, because she would not be able to return to work  (Geo Group's Statement of Undisputed Material Facts at ¶ 26;  Mitchell's Sur-Response at p. 7 and Exhibit 16). Geo Group denied this request in a letter dated May 8, 2003, stating that its policies did not permit extensions of FMLA leave beyond 12 weeks and that Mitchell's employment would be terminated if she was unable to return to work by May 20, 2003 (Geo Group's Statement of Undisputed Material Facts at ¶ 26;  Mitchell's Sur-Response at p. 7 and Exhibit 17).  Mitchell admits that she did not return to work on May 20, 2003 and that on the evening of May 20, 2003 she sent an e-mail requesting a second unpaid extension of FMLA leave.  (Geo Group's Statement of Undisputed Material Facts at ¶ 27, 29;  Mitchell's Sur-Response at p. 7 and Exhibit

18

13).  Mitchell's second request for extended leave stated that she could not return to work until at least August 25, 2003.  (Mitchell's Sur-Response, Exhibit 13).

Third, Mitchell argues that Geo Group's witnesses lack credibility as to whether they were aware of the EEOC complaint Mitchell filed on April 16, 2003.  The evidence indicates that Warden Hatch, who made the decision to terminate Mitchell, never met or spoke to Mitchell and had no knowledge of her EEOC complaint.  (Geo Group's Sur-Reply, Exhibit C-1 at pp. 11-12, 81-82, 86-87).  The evidence also indicates that Krumpelmann was unaware of Mitchell's EEOC complaint until her deposition in this case .  (Geo Group's Sur-Response, Exhibit C-6 at pp. 40, 67).  It is undisputed that neither Krumpelmann nor Pontesso made the decision to terminate Mitchell.  While Mitchell argues that Geo Group's witnesses should not be believed, she has not pointed to any evidence that establishes pretext.  Mitchell's conclusory allegation that Geo Group's evidence is unworthy of belief is not sufficient to carry her burden of demonstrating that she was terminated as a pretext for retaliation.

## CONCLUSION

"When assessing whether [a] plaintiff has made an appropriate showing of pretext, we must consider the evidence as a whole." *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002).  Mitchell has not presented evidence from which a reasonable fact finder could conclude that Geo Group's reasons for Mitchell's termination are unworthy of belief.  *See English v. Colorado Department of Corrections*, 248 F.3d 1002, 1010 (10th Cir. 2001).  The evidence proffered by Mitchell does not rebut Geo Group's evidence that it terminated Mitchell for failing to obey her employer's direct orders to report to her supervisor, Krumpelmann, regarding her leave status and for failing to return to work when her FMLA leave had expired.  Therefore,

19

Mitchell's allegations "are insufficient to carry [her] burden of showing pretext." *English*, 248 F.3d at 1010 (citation omitted). Geo Group is entitled to summary judgment on Mitchell's sole remaining claim for retaliation under Title VII. Accordingly,

IT IS RECOMMENDED that Defendant's Motion for Summary Judgment (doc. # 52), (filed December 5, 2005) be GRANTED and that summary judgment enter in favor of Defendant and against Plaintiff on the sole remaining claim in this civil action. Further,

IT IS ORDERED that the Final Pretrial conference set Thursday August 31, 2006 at 9:15 a.m. is VACATED.

### Advisement to the Parties

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate

20

review." *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may

bar *de novo* review by the district judge of the magistrate judge's proposed findings and

recommendations and will result in a waiver of the right to appeal from a judgment of the district

court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v.*

*Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's

recommendation *de novo* despite the lack of an objection does not preclude application of the

"firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve an

issue for *de novo* review by the district court or for appellate review);  *International Surplus*

*Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995)

(by failing to object to certain portions of the magistrate's order, cross-claimant had waived its

right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th

Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's

ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver

rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 8th day of August, 2006.

BY THE COURT:


*s/Craig B. Shaffer*
United States Magistrate Judge