IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00197-PSF-CBS

FREIDA LYNN MITCHELL,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ON
AUGUST 8, 2006 RECOMMENDATION OF MAGISTRATE JUDGE**

**I.    INTRODUCTION**

This matter comes before the Court on the defendant's Motion for Summary Judgment (Dkt. # 52) filed December 5, 2005. At the time the motion was filed plaintiff appeared *pro se*, and in accordance with the practice of this Court the motion was referred to the Magistrate Judge for a recommendation on proposed findings of facts and rulings (Dkt. # 53). Plaintiff timely filed a pro se opposition to the motion (Dkt. # 57). However, after plaintiff obtained counsel to represent her discovery was reopened, and on June 19, 2006 counsel for plaintiff filed her Sur-Response in Opposition together with 25 exhibits (Dkt. # 94). On June 29, 2006, defendant responded with a Surreply (Dkt. # 99). The matter remained referred to the Magistrate Judge who entered his Recommendation that the motion for summary judgment be granted on August 8, 2006 (Dkt. # 109).

Plaintiff timely filed her Objections to the Recommendation on August 22, 2006 (Dkt. # 110) and defendant filed its Response to Plaintiff's Objections on September 6, 2006 (Dkt. # 111).  The matter is ripe for determination. The Court has determined that oral argument would not be of material assistance to the Court.

## II.   BACKGROUND

Plaintiff Freida Mitchell's one remaining claim in this employment discrimination case alleges that she was terminated from her position as a payroll specialist with Defendant The Geo Group, Inc., ("Geo Group") on May 20, 2003, in retaliation for filing charges of discrimination, in violation of Title VII, 42 U.S.C. 2000e-3(a).  Defendant provided contract services for a Bureau of Immigration and Customs Enforcement facility housing illegal aliens awaiting administrative hearings.

For purposes of this motion, defendant does not dispute that plaintiff has stated a *prima facie* case of retaliation in violation of Title VII as the Magistrate Judge found. The Court agrees with this finding, as it is not disputed that plaintiff filed a charge of discrimination with the EEOC on April 16, 2003, alleging racial discrimination, thus she engaged in protected activity.  It is undisputed that plaintiff was terminated on or about May 20, 2003 when she did not return to work following an authorized leave of absence pursuant to her FMLA request, thus she was subject to an adverse employment action. Finally, the proximity between the filing of the discrimination charge and the plaintiff's termination supports the finding that she has satisfied the element of "causal connection" necessary to make out a *prima facie* case.  *See e.g. Pastran v. K-Mart Corporation*, 210 F.3d 1201, 1205 (10th Cir. 2000).

Nonetheless, defendant argues, it has come forward with legitimate, non-discriminatory reasons for its termination of plaintiff's employment that plaintiff has not shown to be pretextual. As stated by defendant, the reasons for plaintiff's termination were first, that plaintiff failed to comply with direct orders to report to her immediate supervisor, Barbara Krumpelmann, while on FMLA leave, and second, that plaintiff failed to return to work when her FMLA leave expired (Defendant's Response to Plaintiff's Objections at 2).

As described by the Magistrate Judge, the plaintiff's opposition to the motion for summary judgment was based on her argument that these reasons were shown to be pretextual because: 1) Geo Group allegedly fabricated its FMLA leave extension policy to deny plaintiff an extension of her FMLA leave, and there were inconsistencies in Geo Group's treatment of leave requests; (2) there is evidence suggesting that Geo Group's stated reason for Mitchell's termination is false; and (3) perceived inconsistencies and contradictions in the evidence provided by Geo Group's employees show that there are disputes over material facts (Recommendation at 14).

Based on his analysis of the evidence of record, the Magistrate Judge found that plaintiff's arguments were not sufficient to meet her burden under the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), and its progeny, to show that her protected activity was a determinative factor in Geo Group's employment actions, or that Geo Group's explanation for its action was merely pretextual (*id.*). He thus recommends granting defendant's motion for summary judgment on plaintiff's claim of unlawful retaliation.

### III.  STANDARD OF REVIEW

The Magistrate Judge correctly set forth the standards for determining a motion for summary judgment as set forth in Rule 56(c), F.R.Civ.P., and no party objects to the standards applied.

Pursuant to Rule 72(b), F.R.Civ.P. and 28 U.S.C. § 636(b), when objection is made to a Magistrate Judge's recommendation on a dispositive motion such as a motion for summary judgment, the district court shall make a *de novo* determination upon the record, or after additional evidence, "of any portion of the magistrate judge's disposition to which specific written objection has been made" in accordance with Rule 72(b).  Here, plaintiff's Objections state that she objects to the Magistrate Judge's ruling that plaintiff did not raise a genuine issue of material fact as to whether defendant's stated reasons for firing her were pretextual, based on three separate determinations by the Magistrate Judge (Plaintiff's Objections at 3).  Defendant has made no objection to the Recommendation.  The Court confines its *de novo* review to the points raised by plaintiff.

### IV.  FACTS REGARDING PLAINTIFF'S LEAVE REQUESTS AND DEFENDANT'S RESPONSES

The chronology of events leading up to plaintiff's leave requests and the defendant's responses thereto is necessary to an understanding of defendant's asserted reasons for termination and plaintiff's claims of pretext.

The evidence of record reflects that starting no later than November 2002, and continuing through February 2003, plaintiff filed complaints with the management of

defendant regarding treatment by her supervisor, Barbara Krumpelmann (Exhibits B-1 through B-3 and B-5 to Defendant's Motion).  It is not clear that these complaints were based on perceived racial discrimination at the outset, although a February 19, 2003 letter refers to a 'hostile work environment" and "harassment." (Exhibit B-5 to Defendant's Motion).

During the same period, Krumpelmann was allegedly having problems with plaintiff's performance, and issued a verbal warning to plaintiff and made written complaints to management regarding plaintiff's work (See Krumpelmann Affidavit, Exhibit A to Defendant's Motion, ¶¶ 12, 13 and 14).  An investigation of the complaints by Krumpelmann resulted in a disciplinary notice being issue to plaintiff dated February 24, 2003 (Exhibits B-4 to Defendant's Motion).  The notice, signed by Warden Stephen Potesso, recommends suspension of plaintiff for three days (apparently without pay) effective March 4, 5 and 6, 2003, which was approved by the defendant's Regional Vice-President, J.D. Williams (*id.*).

According to Defendant, after receiving the discipline notice plaintiff requested "FMLA leave for anxiety beginning February 26, 2003" (Defendant's Motion at 8; *see also* Exhibit A thereto, ¶ 17), although apparently there is no document reflecting such request.  By letter dated March 11, 2003, defendant advised plaintiff that her request for FMLA leave did not comply with the requirements of the company handbook, apparently because she notified the company's human resources director rather than her "immediate supervisor."  (Exhibits B-6 to Defendant's Motion).  The letter instructed plaintiff as follows: "In the future all communications from your [sic], regarding your

5

work status, will be directed to your immediate supervisor Ms. Barbara Krumpelmann." (*Id.*). The letter also required plaintiff to provide medical certification to substantiate her leave request. (*Id.*). The letter also advised plaintiff that she would "be required to furnish us with periodic reports of your status and intent to return to work every 30 days while on FMLA leave. This communication must also be directed to your immediate supervisor, Ms. Barbara Krumpelmann." (*Id.*).

By letter dated March 25, 2003, defendant granted plaintiff's request for FMLA leave, advising her that the allotted leave time would "end on May 20, 2003." (Exhibit B-7 to Defendant's Motion). The letter also advised plaintiff that before returning to work, she was required to provide a "Return to Work Certification" from her care provider stating whether she was able to resume her normal job functions. Plaintiff acknowledged receipt of this letter on April 7, 2003. *Id.*

On April 16, 2003, plaintiff filed a charge of discrimination with the Colorado Civil Rights Division, asserting that she had been discriminated and retaliated against on the basis of race in connection with her wages and discipline matters (Exhibit B-8 to Defendant's Motion). The record does not reflect the date on which notice of the charge was delivered to defendant or to which company representative it was delivered.

By letter dated April 24, 2003, plaintiff requested an extension of her FMLA leave due to her asserted need to attend therapy classes. The letter does not expressly request an extension of the FMLA leave through any specific date, but states

that the "duration" of her therapy "will be until August 25, 2003." (Exhibit 16 to Plaintiff's Sur-Response (Dkt. # 94)).

An internal memorandum dated April 29, 2003 from Warden Potesso to Michael Krause, defendant's director of compliance, responding to plaintiff's request states "I see no reason to entertain this request, but I will defer to your better judgment." (Exhibit 15 to Plaintiff's Sur-Response).  By letter dated May 8, 2003, over the signature of Charles Martin, Assistant Facility Administrator and then Acting Warden, defendant effectively advised plaintiff that her leave extension request was denied, stating that she was only entitled to FMLA leave through May 20, 2003, that "[o]ur policy does not permit extensions of FMLA" and that she would be terminated if she was unable to return to work by May 20, 2003 (Exhibit B-9 to Defendant's Motion). A postal return receipt bearing plaintiff's signature reflects that this letter was received by plaintiff no later than May 17, 2003 (*id.* at 2).  There is no indication in the record that plaintiff responded in writing or otherwise to defendant after receiving this letter.

The undisputed facts reflect that plaintiff did not return to work on May 20, 2003. In her deposition plaintiff admitted that she did not contact her supervisor on May 20, 2003 (Depo. of Mitchell, Exhibit B to Defendant's Motion, at 287).  After conducting an internal investigation, defendant advised plaintiff by letter dated May 22, 2003 that her employment was terminated effective May 22, 2003.  The letter states that plaintiff had told defendant that she "cannot return to work" and because the employer was "not able to grant" her request for extension of her leave, it was processing her termination (Exhibit 17 to Plaintiff's Sur-Response). The letter bears the signature of Mr. Martin,

the assistant facility administrator, and one version of the document contained in the record bears the notation "approved by Mr. Williams on May 22, 2003." (*Id.* at 1). The Magistrate Judge also cited to evidence in the record that the termination was approved by Warden Tim Hatch, who had replaced Potesso during the interim period to become the acting warden (Recommendation at 11).

**V.     ANALYSIS**

Plaintiff first argues that inconsistent statements by the defendant's management as to whether or not the defendant had a "policy" regarding extending FMLA leave create "a genuine issue of material fact with regard to why Defendant denied Ms. Mitchell's request for an FMLA extension, or in the alternative, did not offer additional unpaid leave." (Plaintiff's Sur-Response at 12). Plaintiff claims that this demonstrates that "Defendant's Stated Reason that Ms. Mitchell was Terminated for Failing to Return to Work After Her FMLA Leave Expired is Pretextual" (*id.* at 11).

The Magistrate Judge disagreed with plaintiff that this asserted genuine issue of material fact precludes summary judgment and requires a trial of plaintiff's claim. He found that at most the evidence reflected that defendant had no policy of extending FMLA leave, and this alone did not create an inference that the failure to extend plaintiff's leave was a "pretext for retaliation." Recommendation at 15.

The Court agrees with the Magistrate Judge that this state of the evidence does not preclude summary judgment although it would phrase the reasoning somewhat differently. There seems no dispute that at least one reason for defendant to terminate plaintiff's employment on May 22, 2003 was that she did not return to work on that date

8

after her FMLA leave ended, as she had been instructed she must do if she wished to retain her job. As the Magistrate Judge points out, plaintiff was certainly told that her FMLA leave would end on May 20, 2003 in the company's letter dated March 25, 2003, a date well before she filed her charge with the EEOC (Recommendation at 18). Thus plaintiff's termination for not returning to work cannot be seriously challenged.

What plaintiff appears to be arguing is that defendant's stated reason for not extending he FMLA leave was false, and thus the Court should infer that decision was a pretext for some kind of retaliation entitling plaintiff to a trial on her claim. The Court declines to make such inference on these facts.

First, the plaintiff's *pro se* complaint alleges retaliatory discrimination by referencing the second EEOC charge she filed in November 2003, a copy of which is attached to the complaint. *See* Complaint at 3. That charge complains only of "retaliation" and references the "discharge from my position of payroll specialist," which she states occurred on May 20, 2003. In other words, there is no express allegation in the complaint of retaliatory treatment in the denial of her request for extension of FMLA leave. Nor is there any claim in the complaint under the FMLA, itself. There has been no amendment of plaintiff's *pro se* complaint, nor even a motion to amend.

But even if the *pro se* complaint is viewed liberally to find that plaintiff is complaining about retaliation in connection with the denial of her request for leave extension, the Court would still find an absence of genuine material fact sufficient to preclude summary judgment on this issue. The record shows, at most, as the Magistrate Judge found, that defendant either had no written policy regarding

9

extending FMLA leave, and may have had no policy at all. This does not demonstrate that the denial of an extension to plaintiff was retaliatory.

Plaintiff has come forward with no direct evidence to demonstrate that on April 29, 2003, when Warden Potesso wrote he saw no reason to "entertain" plaintiff's request, he was acting with a retaliatory motive. Nor has she demonstrated that Warden Martin's letter of May 8, 2003 denying extension of the FMLA leave, was written out of a retaliatory motive.

To be sure, plaintiff filed her first discrimination charge on April 16, 2003, and proximity can create an inference of retaliation. However, an inference based on proximity only gets the plaintiff here past the requirement of a *prima facie* case, an issue not in dispute for purposes of this motion. The fact of proximity itself does not refute a proffered legitimate reason for an employer's actions. *See e.g. Medina v. Income Support Div., New Mexico,* 413 F.3d 1131, 1138 (10th Cir. 2005) ("While we 'have stated that close temporal proximity is a factor in showing pretext, [it] is not alone sufficient to defeat summary judgment.'") (Citations omitted).

Here, there is no direct evidence to show that Warden Potesso was aware of the charge by April 29, 2003, when he authored his memorandum, or that Acting Warden Martin was aware of the discrimination charge on May 8, 2003 when he denied plaintiff's request for extension of her FMLA leave.[1]

---

[1] Plaintiff argues in her Objections that Mr. Martin was aware of the discrimination charge based on an internal e-mail sent by Maria Culbertson to Mr. Krause, defendant's compliance director, dated May 16, 2003, in which Ms. Culbertson states "Mr. Martin AFA/Acting Warden asked me to follow up on this issue." Objection at 7-8; Exhibit 23 to Plaintiff's Sur-Response). Nothing in this e-mail demonstrates that Martin knew of the charge on May 8, 2003, and the e-mail is not even clear what issue is referred to.

Furthermore, even if the case were viewed as plaintiff appears to urge in her Objection, as a claim for retaliatory denial of a request for a FMLA leave extension, the relevant employer adverse action to be considered under such a theory would be the denial of an affirmative request to extend a benefit, namely extended FMLA leave. Yet, as the Tenth Circuit stated in *Meiners v. University of Kansas,* 359 F.3d 1222, 1231 (10th Cir. 2004), "[t]emporal proximity is much less suspicious when the adverse action is the denial of an affirmative request the plaintiff made subsequent to the protected activity."  Otherwise, an employer may become obligated to grant every request an employee makes after lodging a charge of discrimination or face another charge of retaliation.  Thus the proximity between plaintiff's filing a charge of discrimination and the defendant's denial of her request to extend FMLA leave does not alone suffice to establish pretext here.

Plaintiff also seeks to demonstrate the defendant's acts as pretextual by arguing that other employees similarly situated to plaintiff were granted extensions of their FMLA leave, demonstrating that defendant's claim of a policy is false.  As stated in *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000), evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff may establish pretext.  A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly situated employees.

But as the defendant argues, and the Magistrate Judge found (*see* Recommendation at 15-17), the other employees referenced by plaintiff were not similarly situated to plaintiff. They were not granted extensions of their FMLA leave, but rather they were given unpaid leaves of absence, a different status because during those leaves their jobs were not "protected" as would be the case under FMLA leave. In addition, the positions the other employees held (detention officers) allowed the defendant to assignment replacements while they were out, whereas plaintiff was the only payroll specialist and her absence may well have created an operational problem (*see* Krumpelmann Affidavit, Exhibit A to Defendant's Motion, ¶ 21). Thus, the fact that other employees were allowed to take unpaid leaves at the end of their FMLA leaves, a leave which plaintiff never requested, does not create an inference that defendant retaliated against her when it denied her request for extension of FMLA leave.

Defendant further contends that plaintiff was also terminated for failing to follow its directive to her, contained in its letter to her dated March 11, 2003, to communicate directly with her immediate supervisor while on leave and to provide periodic reports of her status (*see* Exhibit B-6 to Defendant's Motion). In her deposition testimony plaintiff admits that she understood this instruction and yet she does not dispute that she did not communicate with Ms. Krumpelmann, her immediate supervisor, during her leave period (Depo. of Mitchell, Exhibit B to Defendant's Motion at 251-53; 263-64; Recommendation at 17). Rather, plaintiff contends she did communicate with Ms. Culbertson, a person in the defendant's human resources department (Plaintiff's Sur-Response at 17-19).

The Magistrate Judge found that even if plaintiff did communicate with Ms. Culbertson during her leave, the defendant had a "legitimate basis for asking employees to communicate directly with their immediate supervisors." (Recommendation at 17). Thus he implicitly found that the defendant's reason here was also not pretextual.

Here, the Court tends to agree with the Magistrate Judge that plaintiff's failure to follow an express direction regarding communicating with her direct supervisor while on FMLA leave is a significant failure on plaintiff's part. Whether such failure alone justifies termination is a decision left to the employer. In the absence of a showing that the reason given was false, and here plaintiff's admits the reason was essentially correct, it is not this Court's function to second-guess the employer's choice of discipline. As stated in *Kenderick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, (10th Cir. 2000): "A company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct. 'Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.'" 220 F.3d at 1233 (citation omitted).

In any event, in the circumstances of the instant case, where the employer advanced one legitimate nondiscriminatory reason for terminating the plaintiff, which the plaintiff fails to demonstrate was pretextual, it is immaterial whether the second advanced reason is also valid, as the employer had valid nondiscriminatory grounds to terminate the employee.

Accordingly, for the reasons set forth above, the Court accepts the Recommendation of the Magistrate Judge that summary judgment in favor of defendant should be granted, and plaintiff's claim for retaliatory discharge should be dismissed.

## VI.	CONCLUSION

Defendant's Motion for Summary Judgment (Dkt. # 52) is **GRANTED** and the Clerk of the Court is directed to enter judgment for defendant.

DATED: September 21, 2006			BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge